MICHAEL J. CROWE *vs.* ALVIN E. WARD.

Suffolk. November 8, 1972. — February 13, 1973.

Present: TAURO, C.J., REARDON, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Evidence,* Weather report. *Negligence,* Motor Vehicle.

Where a defendant in a negligence case claimed the plaintiff had been driving too fast on a wet pavement, it was reversible error to exclude, over plaintiff's objection, an official weather report from Logan Airport, seven and one quarter miles from the accident scene, which showed that there had been no precipitation that day. [86–90]

A judge erred in instructing a jury on G. L. c. 90, § 14, so as possibly to have conveyed the impression that a driver must slow down when approaching any intersection. [90–91]

TORT. Writ in the Municipal Court of the Dorchester District dated October 18, 1967.

On removal to the Superior Court, the action was tried before *Johnson,* J., a District Court judge sitting under statutory authority.

*Matthew T. Connolly* for the plaintiff.
*Francis C. McGrath* for the defendant.

KAPLAN, J. In an action of tort for personal injuries arising out of a collision in Jamaica Plain between a motor scooter driven by the plaintiff and a car driven by the defendant, the plaintiff alleged negligence on the part of the defendant, and the defendant answered with denials and an affirmative defence charging the plaintiff with contributory negligence. The defendant removed the action from the Municipal Court of the Dorchester District to the Superior Court and it was there tried before a jury who returned a verdict for the defendant. The case is here on the plaintiff's substitute bill of exceptions. The plaintiff presses two exceptions: one to the judge's exclusion of an official weather report, and the second to the judge's charge as to the duty of the operator of a vehicle nearing an intersection.

On August 31, 1966, between 4:15 P.M. and 4:30 P.M., the plaintiff on a motor scooter was traveling in a northerly direction on Hyde Park Avenue approaching an intersection with Southbourne Road, while the defendant in a car was approaching the intersection on the opposite side of the avenue traveling south. In that vicinity the avenue is a straight, divided, four-lane highway; there is a gap in the dividing island at the intersection.

The plaintiff testified: When he had fifty to seventy feet still to go to the intersection, he observed the defendant's car pulling to its right and beginning to turn left into the intersection; the car was then about thirty feet from the intersection. The plaintiff reacted to this maneuver by starting to slow down. The car entered the intersection before the motor scooter did. Twenty-five feet across the plaintiff's lane the defendant's car collided with the motor scooter's left side, throwing the plaintiff onto Southbourne Road. The plaintiff testified that it was a clear day with sunshine and the road was clear and dry.

Called by the plaintiff, the defendant testified: It had been raining that day, but the rain had stopped; there was light rain and the roads were damp and wet. In his answers to interrogatories referred to in the bill of exceptions the defendant had said rather more emphatically that it rained that day, and the plaintiff was driving too fast on a wet pavement. The defendant said he could see about 150 feet in a southerly or northerly direction from the intersection. He did not look to the opposite side of the avenue until he made his turn to the left. As to when he saw the plaintiff, his testimony vacillated: "he did not see the plaintiff until he turned"; again, "he did not see the plaintiff until the time of impact"; yet again (under cross-examination by his own counsel), he said that on the dividing strip just south of the intersection there was a traffic light with a waist-high three-foot square sign, and the sign was directly in front of him and "for a moment or so he wouldn't be able to see anything coming down Hyde Park Avenue."

This was the plaintiff's case to which he sought unsuccessfully to add the weather report. The defendant rested on the plaintiff's case.

The document offered was a duly certified copy of the digest of "local climatological data" for the month of August, 1966, gathered at Logan International Airport in Boston under the auspices of the United States Department of Commerce. The data for August 31 confirmed that at Logan it was a dry, warm, clear day with sunshine. Some of the details of the report are set out in the margin.[1]

The bill of exceptions does not disclose what reason was urged by the defendant for objecting to the admission of the report, nor are we given the judge's reason for sustaining the objection. Any hearsay difficulties were obviated since the report was an official record of facts made by public officers in the performance of their duty. *Commonwealth* v. *Dorr*, 216 Mass. 314, 319. *Jewett* v. *Boston Elev. Ry.* 219 Mass. 528, 530–531. See G. L. c. 233, § 78 (entries in books of account), applied in *Sawyer & Co.* v. *Southern Pac. Co.* 354 Mass. 481. The defendant complains in his brief that no evidence was submitted as to the distance between the Logan station and the place of the accident, but judicial notice could be taken of this distance. Hughes, Evidence, § 79. It is about seven and one-quarter miles. The defendant also suggests in his brief that the report was irrelevant, by which he seems to mean that observations at Logan cannot tend to prove conditions at a locus in Jamaica Plain.

---

[1] For August 31 the report showed: Precipitation: none. (There had also been zero precipitation during the preceding seven days.) Temperature: average 73, maximum 80, low 65. Sunshine: 10.3 hours, and 78% of possible. Sky cover: 11 A.M. (Daylight Saving Time), 0.4; 2 P.M., 0.3; 5 P.M., 0.2; 8 P.M., 0.2.

The report also showed: Station pressure: average 30.00 inches. Wind: 11 A.M., 8 knots; 2 P.M., 14 knots; 5 P.M., 10 knots; 8 P.M., 6 knots; all from the east. Visibility: 11 A.M., 8 miles; 2 P.M., 8 miles; 5 P.M., 7 miles; 8 P.M., 10 miles. Relative humidity: 11 A.M., 64%; 2 P.M., 71%; 5 P.M., 79%; 8 P.M., 87%. Haze was observed at 2 A.M. and 5 A.M., smoke and haze at 8 A.M., and haze at 11 P.M., but those characteristics were not observed at the other three-hour intervals during the day.

But as a generalization that is inaccurate. If a heavy, steady downpour under lowered skies was observed at Logan, it would be quite probable, though not certain, that rain was also falling seven miles away, with no barrier between. On the other hand, the fact of a wind velocity in a given direction at Logan might be of little practical use in establishing velocity or direction even a short distance away in a sheltered side street. So relevance in the sense of probative value is, not surprisingly, a case by case question. Our present facts would be expected to lie somewhere between the hypothetical situations mentioned: the dry condition at Logan betokened a similar condition at Jamaica Plain but a shower there was not precluded.

The decided cases on admission of weather reports as proof of conditions at some remove of space or time from the reported observations generally go off on the issue whether the reports have enough probative value to be worth consideration. It is apparent that in some situations the reports may be not only admissible but conclusive or nearly so. *Wadlund* v. *Hartford,* 139 Conn. 169, 173. In many other situations the reports, though not so compelling, have been admitted, leaving the question of their weight to the trier. *Harris* v. *H. G. Smithy Co. Inc.* 429 F. 2d 744, 746 (D. C. Cir.). *Lessow* v. *Sherry,* 133 Conn. 350, 353–354. *Tenney* v. *Pleasant Realty Corp.* 136 Conn. 325, 328–329. *Smith* v. *Reid,* 136 So. 2d 440, 442 (Ct. App. La.). *Ward* v. *Pittsburgh,* 353 Pa. 156, 161–162. *Pitchfork Land & Cattle Co.* v. *King,* 335 S. W. 2d 624, 630–631 (Tex. Civ. App.). *Riddle* v. *Baltimore & Ohio R.R.* 137 W. Va. 733, 747–748. See *Pierce* v. *Worcester & Nashua R.R.* 105 Mass. 199, 203; *Nelson* v. *Old Colony St. Ry.* 208 Mass. 159, 161. In a number of cases the judges could not be held at fault either for admitting or rejecting the reports; the matter has been treated as one of discretion. *Commonwealth* v. *Bonomi,* 335 Mass. 327, 353. *Widder* v. *New York, Chicago & St. Louis R.R.* 235 F. 2d 752, 753 (3d Cir.). See *Phillips* v.

*Haddock,* 163 Mass. 201, 202; *Ducharme* v. *Holyoke St. Ry.* 203 Mass. 384, 393–395.[2]   And in still other cases the reports have been excluded as not sufficiently germane. *Pulvari* v. *Greyhound Corp.* 375 F. 2d 322, 323 (D. C. Cir.) (Fahy, J., dissenting on the point). *Madisonville* v. *Nisbet's Admr.* 270 Ky. 248, 254.   See, generally, Annotation, 34 A. L. R. 2d 1249.[3]   The divergence is to be expected.   We think the present case falls into the second category and the Logan report should have been admitted.   That the report does not point unwaveringly to the weather at the place of the accident is not a reason for excluding it.   "[T]he most acceptable test of relevancy is the question, does the evidence offered render the desired inference *more probable than it would be without the evidence?"* (emphasis in original).   McCormick, Evidence (2d ed.) § 185, p. 437, and, generally, § 185.   See Rules of Evidence for United States Courts and Magistrates (as approved by U. S. Sup. Ct. November 20, 1972), Rule 401.   We are influenced by the general view that relevant evidence should be admitted unless there is a quite satisfactory reason for excluding it.   See Rules of Evidence, *supra,* Rules 401–403.

Basing themselves on the data collected at Logan airport, meteorologists could have given opinions about the chances of like or different weather at Jamaica Plain, and preferably the plaintiff should have offered testimony by a meteorologist along with the report, as counsel have sometimes done in other cases. *Commonwealth* v. *Dorr, supra,* 216 Mass. at 319.   *Mears* v. *New York, N. H. & H. R.R.* 75 Conn. 171, 176.   The judge, indeed, might well have suggested that a meteorologist be called. But we think the jury with the usual forensic safeguards

---

[2] If any tendency is discernible in our decisions, it has been toward this kind of discretionary handling of the reports. But all depends on the specific report and the specific facts. As we indicate below, when the present report is seen in relation to the rest of the proof, its admission seems more than a matter of discretion.

[3] We are not suggesting that we would necessarily agree with the results in all the cases cited.

of the court room were themselves capable of handling the particular report and deriving help from it. We are entitled to impute to the jury some knowledge of weather phenomena and considerable experience with them, cf. *Pitchfork Land & Cattle Co.* v. *King*, 335 S. W. 2d 624, 630-631 (Tex. Civ. App.), just as we impute to ordinary witnesses a modicum of understanding about disease, to cite one example, and therefore do not insist on testimony by physicians whenever and however the subject comes up. See Annotations, 136 A. L. R. 965, 1004; 66 A. L. R. 2d 1082. Cf. *Commonwealth* v. *Masskow*, 362 Mass. 662, 671. The report would here be taken by the jury in relation to other evidence already before them, and could assist them in resolving the contradiction in the testimony. The opponent would be free to demonstrate if he could the weakness of the report, if need be by an expert opinion, and counsel might argue its significance and the judge might give a cautionary instruction on that point. Any suggestion that the jury would be baffled or overwhelmed by the report seems misplaced here, nor did such a contention figure in any of the comparable jury cases on admission of weather reports cited above.

The exclusion of the report could have materially affected the result of the action. The question of permissible speeds was an issue at the trial; the jury were charged in some detail on the subject. They may have found that the defendant was negligent but the plaintiff was contributorily negligent because he was going too fast for a wet pavement — the grievance expressed by the defendant in the answers to the interrogatories — although not too fast for a dry pavement. So also the report if admitted could have affected the jury's appraisal of the credibility of the parties as witnesses.

In giving instructions about speed, the judge somewhat garbled G. L. c. 90, § 14, so that the jury may have received the impression that the law required a vehicle to slow down when approaching any intersection, not only "blind" ones where the driver's view is obscured. Cf.

*McGovern* v. *Tinglof*, 344 Mass. 114, 118. We need not pause to weigh the seriousness of the slip. It can be avoided at retrial.

*Exceptions sustained.*