FRANCIS POIRIER *vs.* TOWN OF PLYMOUTH.

Plymouth.    October 13, 1976. — November 30, 1976.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Negligence,* Toward employee of independent contractor, Ladder, Sufficiency of evidence, Duty to warn.

In a negligence action for injuries sustained by the plaintiff in falling from a ladder on the side of a watertank when an interconnection between a stationary ladder and a revolving ladder broke, the failure of the plaintiff to introduce evidence as to the intended purpose of the connection required a finding for the defendant. [668-670]

TORT.    Writ in the Superior Court dated December 19, 1966.

The case was tried before *Lappin, J.*

*Philip M. Cronin* (*Lawrence I. Winokur* with him) for the defendant.

*Cortland A. Mathers* for the plaintiff.

GRANT, J.   This is an action to recover damages for the personal and related injuries sustained by the plaintiff when he fell from a ladder on the side of a 50,000 gallon elevated steel water tank owned by the defendant town and forming part of its municipal water supply system. The plaintiff had a verdict, and the defendant has appealed from the ensuing judgment. Numerous questions have been argued, but in the view we take of the case we need consider only whether it was error to deny the defendant's motion for a directed verdict, presented at the close of all the evidence and grounded on the proposition that the evidence was insufficient to warrant a finding of negligence on the part of the defendant.

The plaintiff, a painter by trade, was an employee of an independent contractor (Kessler Company) experi-

enced in the painting of water tanks which had been en-
gaged by the defendant to paint the exterior of the tank
in question. Accordingly, we examine the evidence most
favorable to the plaintiff in the light of the defendant's
duty to the plaintiff in the circumstances, which was "the
same duty it owed its own employees — to disclose hidden
or concealed defects on the premises of which it was aware
or should have been aware through the exercise of reason-
able care." *Afienko* v. *Harvard Club of Boston,* 365 Mass.
320, 327-328 (1974). Our analysis starts and concludes
with a determination of the threshold question whether
the evidence was sufficient to warrant a finding that the
plaintiff was caused to fall by reason of a "defect" within
the meaning of the rule just stated.[1]

The tank in question (which had been torn down by the
time of trial) rested on four vertical steel columns, each
about thirty-five feet in height, which rose from the ground
to points which were evenly spaced around the perimeter
of a circular girder located at the bottom of the vertical
aspect of the tank. One of those columns was equipped
with a rigid steel ladder, referred to in the evidence as the
"stationary ladder," which extended from near ground
level to a point near the top of the column and just below
the aforementioned circular girder. The only means by
which one could ascend from that point to the top of the
tank (in which was located the only access to the interior
of the tank) was by use of another ladder, referred to as
the "revolving ladder," which was suspended from a ball
(or pivot) located at the apex of the conically cambered
top of the tank. The revolving ladder sloped downward in
an arc across the top of the tank from the ball (or pivot)
to a point near a circular girder at the top of the vertical
aspect of the tank, from which point it extended down the
side of the tank to the same level as the top of the sta-
tionary ladder. The side rails of the revolving ladder were
hinged at the juncture of its sloping and vertical segments

---

[1] We shall assume for the purposes of our analysis that all the evi-
dence summarized in our opinion was properly admitted.

in such fashion as to permit the bottom portion of the vertical segment of that ladder to be pulled away from the side of the tank. A lug extended horizontally from a point near the bottom of one of the side rails of the revolving ladder in such fashion as to hold the vertical segment of that ladder several inches away from the rounded vertical surface of the tank at all times.[2] The bottoms of the side rails of that ladder were slotted in such fashion as to permit them to be bolted or otherwise fastened to the tops of the side rails of the stationary ladder whenever the two ladders should be vertically aligned.

The revolving ladder was designed to permit its entire assembly to be rotated around the circumference of the tank, thereby enabling a man standing on its rungs (such as a painter) to reach every point on the top and vertical surfaces of the tank.[3] The revolving ladder also provided the only means of access to the top (and thus to the interior of) the tank. As there was only one stationary ladder, it was obvious that one could not proceed from the ground to the top of the tank unless the two ladders should be vertically aligned. It was also obvious, although never articulated in the testimony, that it would be impossible to proceed from the ground to the top of the tank if the bottom of the revolving ladder should, for some reason, become laterally displaced from the top of the stationary ladder at such a distance as to be inaccessible therefrom.[4]

---

[2] The evidence does not disclose how the sloping segment of the revolving ladder was kept away from the cambered top surface of the tank.

[3] There was evidence in behalf of the defendant, which the jury were not obliged to believe, that the purpose of the slots in the bottoms of the side rails was to permit the attachment of casters which would facilitate the rotation of the revolving ladder around the circumference of the tank whenever there should be occasion to perform maintenance work on the exterior surfaces of the tank. There was testimony by the Kessler foreman that he did not plan to use the revolving ladder for that purpose and that he intended to place his painters on a boatswain's chair suspended from the apex of the tank.

[4] Several photographs of the tank taken after the accident show considerable lateral displacement of the revolving ladder from the top of

The plaintiff, who was a painter, was one member of a three-man crew which arrived at the tank to commence painting it. At that time both ladders were vertically aligned. One crew member, a licensed rigger experienced in the painting of water tanks,[5] expected that the two ladders would be connected by some form of "temporary connection." He weighed 135 pounds and climbed both ladders to the top of the tank and then descended to the ground without incident, and without observing whether there was in fact any interconnection between the two ladders. The plaintiff, who weighed 185 pounds, then commenced climbing in the direction of the top of the tank. He did not specifically look for any connection between the two ladders. With his feet and weight still on one of the top rungs of the stationary ladder, he reached up and grasped one of the lower rungs of the vertical segment of the revolving ladder. As the plaintiff began to raise his weight, the bottom of the revolving ladder suddenly sprang away from the side of the tank and struck the plaintiff in the chest, causing him to lose his grip and fall to the ground. On the evidence most favorable to the plaintiff, the jury could have found that the bottom of the revolving ladder had snapped away from the side of the tank because of the shearing (due to rust and corrosion) of a bolt which had at some undetermined time been passed through the slot in the bottom of one of the side rails of the revolving ladder and a hole in the top of the corresponding side rail of the stationary ladder.[6]

We return to our inquiry as to whether there was a "defect" within the meaning of the *Afienko* line of cases. Our inquiry must center on the intended purpose of what-

---

the stationary ladder, with the bottom of the former hanging loose in space. There was evidence offered in behalf of the plaintiff to the effect that the tank was occasionally subjected to the strong winds of northeast storms.

[5] The evidence was conflicting as to whether the plaintiff had previously painted a water tank.

[6] At several points in his testimony the plaintiff insisted that the two ladders had been "tied" (rather than bolted) together; it makes no difference in the result how the two ladders may have been connected.

ever interconnection may have existed between the two ladders at the time of the accident. See *Burr* v. *Massachusetts Elec. Co.* 356 Mass. 144 (1969), in which the deceased had been electrocuted upon coming into contact with an energized electric wire and the court was careful to note that the purpose of waterproofing the wire had been "to provide a corrosion-proof covering rather than insulation" (p. 146). In the present case there was voluminous expert testimony as to how the tank had been constructed and as to the design, manner of construction and intended purpose of the revolving ladder. There was no evidence whatsoever of the intended purpose of any connection between the two ladders. In this respect the present case differs from those cases in which it was either obvious or there was expert testimony from which the jury could find that the accused object was designed and intended to withstand the stress of a man's weight. See, e.g., *Carroll* v. *Metropolitan Coal Co.* 189 Mass. 159, 161 (1905) (ladder rung); *Levesque* v. *Charlton Mills,* 222 Mass. 305, 307 (1915) (same); *Wilson* v. *Conlin,* 338 Mass. 295, 296-297 (1959) (cellar stair); *Afienko* v. *Harvard Club of Boston,* 365 Mass. at 322 (anchor bolt for use by window washers); *Gobern* v. *Metals & Controls, Inc.* 418 F. 2d 290, 293 (1st Cir. 1969) (railing around platform on construction staging).

A careful review of all the evidence leads us to the conclusion that it was just as likely that the intended purpose of any connection between the two ladders was to prevent the revolving ladder from moving in a lateral direction away from the stationary ladder to some point where the bottom of the former might become inaccessible from the top of the latter when neither should be in use as it was that the intended purpose was to prevent the bottom of the revolving ladder from moving away from the vertical side of the tank when a man should attempt to suspend his weight from the bottom of that ladder. Compare *Commonwealth* v. *Shea,* 324 Mass. 710, 713 (1949), and cases cited. "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be

said to have been established by legitimate proof. A verdict in favor of the party bound to maintain one of those propositions against the other is necessarily wrong." *Smith v. First Natl. Bank,* 99 Mass. 605, 612 (1868). We are of opinion that the evidence was insufficient to warrant a finding that any interconnection between the two ladders was designed or intended to prevent what happened in this case. In short, the plaintiff failed to sustain his burden of introducing evidence sufficient to warrant a finding of a defect on the defendant's premises.[7]

The judgment is reversed, the verdict is set aside, and judgment is to be entered for the defendant.

*So ordered.*

---

[7] The single count of the declaration alleged that "while ... [the plaintiff] was on the ladder he was caused to fall because of the defective condition of the ladder." The case was tried on the sole theory that the defect consisted of whatever may have formed the interconnection between the revolving and stationary ladders.