KENNETH J. PETRAS, individually and as administrator,
& another[1] vs. JOHN E. STORM & others.[2]

Hampden. May 22, 1984. — June 29, 1984.

Present: GREANEY, C.J., ARMSTRONG, & WARNER, JJ.

*Negligence,* Violation of law. *Motor Vehicle,* Operating under the influence.
*Practice, Criminal,* Instructions to jury.

At the trial of an action for damages arising from an accident in which a child
was struck by an automobile operated by the defendant, where the
evidence would have permitted the jury to find that the defendant's
consumption of intoxicating liquor had influenced his driving and had
contributed to the occurrence of the accident, it was error requiring
reversal for the judge to deny the plaintiff's request for an instruction
to the jury that they could consider as evidence of the defendant's
negligence any violation by him of G. L. c. 90, § 24(1)(a), which
punishes an operator who drives a motor vehicle while under the influence
of intoxicating liquor. [333-336]

CIVIL ACTION commenced in the Superior Court Department
on November 3, 1980.

The case was tried before *Griffin,* J., and motions for a new
trial were heard by her.

*S. Thomas Martinelli* for the plaintiffs.
*L. Jeffrey Meehan* for the defendants.

GREANEY, C.J. During the late afternoon of March 19, 1980,
at approximately 5:00 P.M., Joseph Petras, age eight, was
riding his bicycle on Lower Hampden Road in Monson, in the
company of his parents, when he was struck and killed by an
automobile operated by the defendant John E. Storm. The
boy's parents brought an action in the Superior Court against
Storm, his employer Lindco, Inc., and Hertz Corporation (from

_____
[1] Dorothy J. Petras.

[2] Lindco, Inc., and Hertz Corporation.

which Lindco had leased the automobile), seeking damages
for wrongful death and conscious pain and suffering. After
trial, a jury, by special verdict, found that Storm was not
negligent. Judgment was entered on the jury's verdict for the
defendants. A motion for a new trial was thereafter denied.
The plaintiffs have appealed from both the judgment and the
denial of their motion for a new trial. We conclude that the
judge's failure to instruct the jury on a material issue dealing
with the effect of a violation of G. L. c. 90, § 24(1)(a) (operat-
ing under the influence of intoxicating liquor), requires that
the judgment be reversed and that the case be retried.

There was evidence that March 19, 1980, was sunny and
seasonably warm, that Lower Hampden Road is hard-topped
and at the accident site is twenty feet wide and divided into
two lanes of about ten feet each, that the road was free of snow
and ice, that traffic at about 5:00 P.M. was light, that the
automobile operated by Storm was operating westerly toward
a knoll in the road, and that the vehicle struck the boy on the
bicycle approximately at the top of a five percent grade in the
road. At the time of the incident, the deceased and his parents
were traveling single file on their bicycles at the edge of the
road in an easterly direction. The order of their procession was
the deceased's father first, followed by the deceased and his
mother. There was conflicting testimony regarding the speed
limit on Lower Hampden Road. Some witnesses testified that
traffic control signs placed the speed limit at twenty-five miles
per hour while other witnesses suggested that the speed limit
was forty miles per hour. Storm's speed was estimated by the
deceased's father, when Storm passed him, at approximately
fifty miles per hour and by other witnesses, including Storm,
at approximately twenty-five to thirty-five miles per hour.[3]
Storm testified that his vision was not affected by the sun as
he approached the knoll, that he had seen the deceased's father
stopped on his bicycle at the side of the road, and that, apart

---

[3] The judge's final instructions left the question of Storm's speed to be
resolved by the jury on the conflicting evidence, and advised the jury of
possibly applicable speed limits by reference to the standards set forth in
G. L. c. 90, § 17.

from taking his foot off the accelerator, he did not attempt to brake or slow his vehicle down as he approached the bicyclists and the rise in the road.

After Storm's vehicle hit the deceased, the brakes locked the wheels, and the automobile skidded about sixty-two feet. Tests conducted after the accident by the Monson police indicated that the speed of Storm's vehicle at the time of the skid was approximately thirty-two miles per hour and that the vehicle was going a few miles per hour faster when it hit the bicycle. The police also concluded, based on their tests, that a driver of an automobile similar to the one being driven by Storm, and going in the same direction, should have seen a boy like the deceased riding a bicycle at a distance of 178 feet. An accident reconstruction expert, testifying for the plaintiffs, agreed with the estimate of speed arrived at by the police but concluded, based on the conditions prevailing at the time of the accident, that the driver of an automobile in the circumstances facing Storm, could first have seen the boy's cap at a distance of 203 feet. Storm's deposition testimony, introduced at trial, was that he first saw the boy on his bicycle about thirty to sixty feet away as he ascended the rise in the road, that the boy suddenly turned his bicycle toward the center of the road into the path of Storm's vehicle, and that he (Storm) simultaneously hit the brakes and turned his automobile to the left to avoid the collision. This testimony was disputed by Mrs. Petras and another eyewitness, both of whom testified that the decedent was going in a straight line when he was hit.

There was further evidence that Storm had consumed two martinis for lunch; that he had drunk according to his testimony one and one-half bottles of beer at a club a short time before the accident, but that according to testimony of other witnesses he had consumed two full bottles of beer at the club; that he had used a bathroom in a house at the scene of the accident and urinated all over the bathroom floor; that to the owner of that house, who had an opportunity to observe him, Storm appeared unsure of what he was doing; that Storm chewed something right after the accident which he testified was a Rolaid; and, according to Storm, that he had not seen the boy

until his vehicle just came over the crest of the hill less than a second before the vehicle struck the boy. The question whether Storm's ability to operate the automobile safely had been affected by his consumption of alcohol was argued to the jury by both counsel in their summations.

The plaintiffs, consistent with their theory of negligence, seasonably filed written requests, see Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974), that the court instruct the jury that they could consider as evidence of Storm's negligence any violation they found of the following statutes: G. L. c. 90, § 14, which establishes precautions for the safety of bicyclists, G. L. c. 90, § 17, which penalizes speeding, and G. L. c. 90, § 24(1)(*a*), which punishes an operator who drives a motor vehicle while under the influence of intoxicating liquor. The request for the instruction involving G. L. c. 90, § 24(1)(*a*), read as follows:

> "We have another law in Massachusetts which says in part 'whoever upon any way (and this means a roadway such as Lower Hampden Road in this case), who operates a motor vehicle while under the influence of intoxicating liquor, shall be punished by a fine or imprisonment.' This, too, is a safety law for the protection of travelers on the highway, and if you find that Mr. Storm violated this law, then you may consider that as further evidence of negligence."

The judge granted the requests predicated on Storm's possible violation of either c. 90, § 14, or c. 90, § 17, and suitably instructed the jury on those two issues. The judge, however, refused the request framed pursuant to c. 90, § 24(1)(*a*). The plaintiffs made a timely and specific objection to the judge's failure to give the requested instruction.

1. The violation of a criminal statute is "some evidence of the defendant's negligence as to all consequences the statute was intended to prevent." *Adamian* v. *Three Sons, Inc.,* 353 Mass. 498, 499 (1968). See *Memmolo's Case,* 17 Mass. App. Ct. 407, 412 (1984). General Laws c. 90, § 24(1)(*a*), is designed to protect the safety of users of the State's public ways

from injuries caused by operators of motor vehicles whose senses have been impaired by the voluntary consumption of intoxicating liquor. See *Commonwealth* v. *Lyseth,* 250 Mass. 555, 558 (1925). There was sufficient evidence in the case from which the jury could have found that Storm's operation of his vehicle at the time of the accident had been affected by his consumption of alcohol. It was not necessary that the evidence be sufficient to prove Storm drunk, *Commonwealth* v. *Lyseth, supra* at 558, *Commonwealth* v. *Bernier,* 366 Mass. 717, 720 (1975); Nolan, Criminal Law § 555 (1976), for, according to the instruction approved in the *Lyseth* decision, a motorist can be found to be operating under the influence of intoxicating liquor, in violation of G. L. c. 90, § 24(1)(*a*), if "the liquor that he had taken influenced [his driving] to any perceptible degree." 250 Mass. at 557. See also Martin & Hennessey, Automobile Law and Practice § 1470 (2d ed. 1967). As indicated, the jury could have so found in this case, and, on the evidence, could have inferred that Storm's consumption of alcohol had contributed to the occurrence of the accident by slowing his reaction time, thereby preventing him from stopping short or taking evasive action to avoid the collision.

2. The defendants argue that a trial judge has wide discretion to determine when an instruction like the one requested should be given and that the judge's failure to do so here did not constitute an abuse of that discretion. A judge's discretion with respect to requests for jury instructions in a civil case was the subject of thorough and incisive analysis by Justice Lummus in *Barnes* v. *Berkshire St. Ry. Co.,* 281 Mass. 47, 50-52 (1932). Important guiding principles can be drawn from Justice Lummus' discussion.

First, and as a general rule, requests seeking an instruction that a finding of certain specified facts (of which there was some evidence) do or do not warrant or require a particular conclusion may, within an exercise of the judge's discretion, be properly refused. "[T]he combinations of facts that may possibly be found by the jury are so numerous in most cases, that to require a judge to state the legal result of each one of them upon request would fill the charge with rulings for the most part

immaterial to the facts actually found by the jury, and make the charge long, unbalanced and confusing." 281 Mass. at 50. Second, "[t]his [general] rule does not impair the right to require instructions as to the legal effect of a fact which of itself constitutes a separate and distinct issue, rather than a fragment of the subsidiary facts bearing upon an issue." *Id.* at 51. For example, "[s]ince the law gives definite effect to . . . intoxication or other violation of criminal law or of specific statutory duty, a judge on request must instruct the jury as to that, apart from . . . [general principles of] negligence." *Id.* at 52, and cases cited.[4] A request falling within the second principle ordinarily requires that the jury be instructed on the issue covered in the request consistent with the judge's paramount duty to instruct "the jury fairly, clearly, adequately, and correctly concerning principles that ought to guide and control their action." *Mahoney* v. *Gooch,* 246 Mass. 567, 571 (1923). "[W]here attention is properly directed to the omission and it is not remedied, an exception may be sustained if necessary to render substantial justice." *Ibid.*

We conclude that the judge erred by not giving an instruction which guided the jury with respect to the legal consequences of a finding that Storm had been in violation of G. L. c. 90, § 24(1)(*a*), at the time of the accident. Indeed, the instruction requested, on a view of the evidence which the jury could have accepted, falls squarely within the example used by Justice Lummus in his discussion of the second principle. Moreover, we think any potential for unfairness in the instruction arising from the use of the words "further evidence of negligence" would not excuse the need for a suitable instruction on the issue whether Storm was driving while intoxicated. "Even though the request was not strictly accurate in the general form

---

[4] A third principle (which we find not involved in this case) completes Justice Lummus' discussion as follows: "[T]he [general] rule is subject to a genuine exception based, like the rule itself, on practical grounds. Sometimes the issue depends upon the existence of some fact, theoretically subsidiary but practically decisive if found. In such a case, for a judge to ignore the simple concrete test and submit the case upon abstract general instructions blurs the point and may mislead the jury." 281 Mass. at 52.

in which it was presented, it was sufficient to direct the consideration of the judge to an important principle of law not adverted to in the charge, an omission which well may have resulted in harm to the [plaintiff]." *Bergeron* v. *Forest,* 233 Mass. 392, 402 (1919). See *Liakos* v. *Moreno,* 351 Mass. 90, 94 (1966); *Pierce* v. *Nawn,* 5 Mass. App. Ct. 224, 226 (1977). The other arguments pressed by the defendants do not persuade us that the plaintiffs should not have a new trial.[5]

3. In view of our conclusion that there must be a new trial due to error in the charge, we need not address the other two arguments made by the plaintiffs on appeal with respect to the denial of their motion for new trial.

*Judgment reversed.*

---

[5] The fact that there was other evidence which would have warranted the jury in finding that Storm's operation of the automobile had not been affected by his consumption of intoxicating liquor does not excuse the need for the instruction. Nor do we consider the error to be harmless since it goes to a material issue in the case.