JOHN J. CALLAHAN *vs.* BOSTON EDISON COMPANY; CROUSE NUCLEAR ENERGY SERVICES, INC., third-party defendant. July 7, 1987. *Practice, Civil,* Instructions to jury, New trial. *Negligence,* Toward employee of independent contractor, Comparative.

During the course of removing debris (sludge, asbestos and sheet metal) from a boiler which belonged to the defendant Boston Edison Company (Edison), the plaintiff Callahan slipped and fell. A jury returned a verdict that Edison had been negligent and awarded Callahan damages of $315,000; the jury found against Edison on its third-party complaint against Crouse Nuclear Energy Services, Inc. The appeal concerns four claims of error in jury instructions and a generalized claim that the verdict was so against the evidence that Edison was entitled to a new trial. Edison had moved for a new trial and that motion was denied.

At the time of the accident on October 31, 1978, Callahan was twenty-six years old. In his relatively short lifetime he had experienced an astonishing number of mishaps including being shot in the groin, on another occasion being shot in the base of the penis, on two separate occasions being struck

---

over the head with a tire iron ("in the wrong place at the wrong time," Callahan explained on the witness stand), a collapsed lung as a result of an automobile accident, a crushed left hand in an industrial accident, and injury to his knees originating with a football injury and aggravated in a barroom altercation. This remarkable record was well advertised to the jury.

Callahan's employer during the Edison clean-up operation was Crouse Nuclear Energy Services, Inc. (Crouse), an independent contractor engaged by Edison. The jury were entitled to believe from the evidence that Callahan's job was to gather debris in a rubber-wheeled buggy and to push the buggy over a grate which led outside the boiler. There the laborers dumped their loads. On the night in question water began to rise above the grate. The laborers wore no special clothing or boots. Callahan told his foreman of the rising water level but, despite the risk of slipping, returned to work because it was his job. Some time around 3:00 A.M., he slipped and fell in three inches of water as he was pushing a loaded buggy. A foreman took him to Massachusetts General Hospital. Callahan suffered knee injuries which his physician attributed to the slip and fall in question. Ultimately Callahan's physician performed over ten surgical procedures on his patient's left knee, including removal of the kneecap. There was permanent loss of function.

Edison kept the drainage trenches in the boilers dry through a system of automatic pumps. Those pumps had malfunctioned, allowing the water to rise, a circumstance which Crouse's foreman reported to the Edison watch engineer. The latter examined the pumps and pronounced that they were, indeed, not functioning properly. Normally, an alarm would sound if the pumps malfunctioned, but Edison's personnel heard none.

1. *Jury instructions.* We touch first on a general problem which the jury instructions portion of the appeal presents. Of the four errors in jury instructions which Edison argues, three of them were called to the attention of the judge only by reference to the number of the request for instruction which Edison had made. In this particular case, the record suggests that the trial judge in listening to the objections had the parties' numbered requests for instructions spread before him because he responded with specificity to requests for additional instructions made with reference to number only. While the record does not reflect that the trial judge asked counsel to object by number only, it appears that there was an understanding between counsel and the judge about how counsel would express what they wanted in the way of amended instructions. See *Stepakoff* v. *Kantar*, 393 Mass. 836, 839-840 (1985). Unless there is a record which establishes that kind of understanding, it is, of course, necessary to state distinctly the matter to which a party objects and the grounds of objection. Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974). *Narkin* v. *Springfield*, 5 Mass. App. Ct. 489, 491 (1977). *Benjamin* v. *Felton & Son*, 9 Mass. App. Ct. 926, 927 (1980). *MacCuish* v. *Volkswagenwerk A.G.*, 22 Mass. App. Ct. 380, 396-397 (1986), *S.C.*, 400 Mass. 1003 (1987).

(a) The judge charged the jury generally on negligence, e.g., that the plaintiff would have to prove that "Edison committed an act that an ordinary and cautious employer would not have committed or failed to do something that . . . an ordinary, cautious employer would do . . . ." Edison requested that the judge instruct the jury that they must find that the rising water level had persisted sufficiently long that Edison's employees should have known about it and had an opportunity to correct it, i.e., that Edison had notice of the dangerous condition. An instruction along those lines was not required in a case where the negligence of the defendant or its agents brought the dangerous condition into existence. *Jennings* v. *First Natl. Stores, Inc.*, 295 Mass. 117, 118-119 (1936) (dropped grapes on floor). *Heina* v. *Broadway Fruit Mkt., Inc.*, 304 Mass. 608, 609-610 (1939) (store clerk dropped lettuce leaves on floor). Compare *Ventor* v. *Marianne, Inc.*, 1 Mass. App. Ct. 224, 225-226 (1973). The instant case is unlike the situation where the slippery substance winds up on the supermarket floor from a source unknown and the plaintiff must prove that the defendant had a reasonable time to spot the material and remove it. Here the malfunction in Edison's equipment caused the water to rise.

(b) The instruction which the judge gave on proximate and intervening cause was consistent with *Gordon* v. *Bedard*, 265 Mass. 408, 412 (1929). Edison sought a fact-specific instruction, viz., "If you find that there was an unreasonable accumulation of water, you must also decide whether Crouse ignored the situation and whether its disregard was the actual cause of Callahan's accident. If so, you shall return a verdict for Edison." For the reasons explained in *Barnes* v. *Berkshire St. Ry.*, 281 Mass. 47, 50-51 (1932), and recently rehearsed in *Petras* v. *Storm*, 18 Mass. App. Ct. 330, 334-335 (1984), it is not required and often it is unwise for a judge to charge on what result follows from a particular set of facts which a jury might, but need not, find.

(c) Edison requested a charge that it was not required to guarantee that no one would be hurt on its premises and that if Callahan had been hurt by a condition he had been hired to remedy, he cannot recover. There is in *Poirier* v. *Plymouth*, 374 Mass. 206, 226-227 (1978), recognition that there are instances of hazardous employment when the employees of an independent contractor are aware of the risk inherent in their task. The judge dealt generally in his instructions with the duty Edison owed to provide a reasonably safe workplace in which the plaintiff could work. The jury could reasonably assume that this precluded liability if an employee were hurt by the very hazard he was required to remedy. Moreover, removing water from the drainage trenches and risks inherent in that activity were not part of the case. The evidence was that Edison ordinarily did not allow any personnel in the drainage trench without special gear until the trench had been drained, and that there were multiple pumps to keep the trench and the grating over it dry, as well as an alarm system to warn Edison if the pumps were not functioning. This was a case where a request for

instruction correct in law could be refused because not appropriate to any reasonable construction of the evidence. *Mishara Constr. Co.* v. *Transit-Mixed Concrete Corp.*, 365 Mass. 122, 126 (1974).

(d) The judge instructed the jury to consider whether the plaintiff Callahan had contributed to the mishap through his own negligence. In that event, the jury were to assess comparative negligence and the judge so instructed them. See G. L. c. 231, § 85. Edison protests that it was entitled, as well, to an instruction that, if the level of the water was open and obvious, the jury might find Callahan contributorily negligent and, in consequence, might deny recovery. The requested instruction did not state a correct principle of law. See G. L. c. 231, § 85. Whether a danger is open and obvious has to do with the duty of the defendant, not the negligence of the plaintiff. See *Valunas* v. *J. J. Newberry Co.*, 336 Mass. 305, 306 (1957); *Polak* v. *Whitney*, 21 Mass. App. Ct. 349, 353 (1985); Harper, James & Gray, The Law of Torts § 27.13 at 253-254 (2d ed.1986). There was no obligation to give an erroneous instruction. *Lantz* v. *Chandler*, 340 Mass. 348, 350 (1960). *Reese* v. *McGinn Bus Co.*, 6 Mass. App. Ct. 916, 917 (1978). The request might possibly be thought as having alerted the judge to a principle of law that it would have been well to clarify, *Petras* v. *Storm*, 18 Mass. App. Ct. at 336, and the charge would perhaps have been improved by mention that a defendant may, in some circumstances, have no duty to remedy a hazard that is open and obvious. See *Poirier* v. *Plymouth*, 374 Mass. at 226-227; *Sweet* v. *Cieslak*, 23 Mass. App. Ct. 908, and cases there cited (1986). In light of a satisfactory charge on general principles regarding the duty of a property owner to maintain premises in reasonably safe condition and the satisfactory charge on comparative negligence, taken with the failure of the defendant to request a correct charge, there was no reversible error in the instructions given.

2. *Denial of motion for a new trial.* We have reviewed the record with regard to Edison's claim that Callahan's testimony was tainted with perjury. There were indeed some remarkable lapses of memory by Callahan about his medical history. Those weaknesses were ably revealed in cross-examination. The essential facts of the accident were corroborated by a coworker and the foreman for Crouse. The nature of the injuries and the prognosis were explained by Callahan's physician. For the familiar reasons set out in *Davis* v. *Boston Elev. Ry.*, 235 Mass. 482, 496-497, 502 (1920), and *Hartmann* v. *Boston Herald-Traveler Corp.*, 323 Mass. 56, 60-61 (1948), we think no abuse of discretion attended the trial judge's denial of the defendant's motion for a new trial. See also *Burke* v. *Gallison*, 7 Mass. App. Ct. 918, 919 (1979); *Kord* v. *Baystate Med. Center, Inc.*, 13 Mass. App. Ct. 909, 910 (1982). Edison insists that Callahan ignored an open and obvious danger ( a position facially inconsistent with Edison's assertion that the water level in the trench had not risen as high as claimed because no alarm went off) and that the jury, therefore, should have found *some* contributory negligence (in answers to special questions they found none).

Edison's position fails to consider evidence that the work force of which Callahan was a part were required to slosh through the water with their wheelbarrow-type buggies notwithstanding its rising level. See *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 880 (1978).

*Judgments affirmed.*
*Order denying motion for a new*
*trial affirmed.*

*Thomas D. Burns* (*Edward J. Krug* with him) for Boston Edison Company.

*John N. Lewis* for the plaintiff.

*Francis J. Lawler* for Crouse Nuclear Energy Services, Inc.