# United States Court of Appeals

## For the First Circuit

No. 18-1848

RAYMOND LAPOINTE,

Plaintiff, Appellant,

v.

SILKO MOTOR SALES, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. M. Page Kelley, <u>Magistrate Judge</u>]

Before

Howard, <u>Chief Judge</u>,
Lynch and Lipez, <u>Circuit Judges</u>.

<u>David J. Oliveira</u> for appellant.
<u>John F. Gleavy</u>, with whom <u>Lynch & Lynch</u> was on brief, for appellee.

June 12, 2019

**LIPEZ**, **Circuit Judge**.  In this diversity tort action, Raymond Lapointe seeks damages for a severe knee injury sustained when he slipped on fluid at an auto dealership that his company had been hired to clean.  Finding that the dealership neither had a duty to warn Lapointe of the puddle nor acted negligently in failing to address it, the district court granted summary judgment for defendant Silko Motor Sales, Inc.  After careful review of the facts and the law, we affirm.  The district court properly found that Silko could not be found liable because Lapointe was "hurt by the very hazard he was required to remedy."  Callahan v. Bos. Edison Co., 509 N.E.2d 1208, 1210 (Mass. 1987).

## I.

We summarize the relevant facts, which are undisputed unless otherwise noted.  Silko hired Jan-Pro Cleaning Systems ("Jan Pro") to clean its dealership, and the parties' written agreement specified that the cleaning tasks included "[m]achine scrub[bing] all service floors" six times per week, using a degreasing chemical provided by the dealership.  At the time of his fall in July 2013, Lapointe was a regional manager for Jan Pro, where his responsibilities included filling in for the company's franchise owners when they were sick.  On the evening that Lapointe slipped, he was substituting at Silko for a franchisee, as he had done there on previous occasions.

Lapointe cleaned other parts of the Silko facility before entering the service area and, before scrubbing the floors there, he decided to dispose of trash in a dumpster outside. He headed toward the button that opened the service area garage door. As he walked around a pallet holding engine parts, he lost his balance and fell. Lapointe then noticed an accumulation of oil or transmission fluid on the floor near the pallet, which he estimated to be about eight inches in diameter and one-sixteenth of an inch deep. After his fall, Lapointe completed his work at the dealership, including cleaning the substance from the floor where he fell.

Lapointe testified in his deposition that the pallet was waist high and placed on the floor in an area that Jan Pro ordinarily cleaned with an "auto scrubber" machine, using the Silko-provided degreaser. Describing the general area of his fall, Lapointe reported that "[s]ometimes there was a car on the ground, sometimes it was elevated like that so we could clean underneath it. . . . This was a typical scene in a garage. There was always three or four or five vehicles in the garage at night." Asked if, in the past, he would "clean up spots or oils or other transmission fluids," Lapointe responded:

> Absolutely. You got to understand, this entire floor, there was oil and grease everywhere. People had been working all day long. This particular one was a puddle because the engine had leaked. But typically

there would be oil and grease everywhere. And the machine with the chemical that they purchased, it was a very good chemical, and the machine did a very good job, but I hadn't gotten to that point yet.

In a statement containing six facts in addition to those the parties agreed upon, see Mass. Loc. R. 56.1, Lapointe asserted that "he had never encountered stored automotive parts (engines, transmissions) as he did on the night in question and, therefore, was not aware of the risk of having those parts leak pools of slippery fluids." He also stated that Silko's policy called for its employees to "fully drain[]" automotive parts before placing them for disposal and to cover any spills resulting from drainage with absorbent mats.

In March 2016, nearly three years after his fall and injury, Lapointe sued Silko in federal court, asserting common law claims for negligence and failure to warn.[1] In the negligence count, Lapointe alleged that Silko breached its duty to maintain its premises in a reasonably safe condition for persons whose presence was foreseeable, causing the service area floor to be "covered with a substance that presented an unreasonable risk of harm" to him. In the second count, Lapointe alleged that Silko breached its duty to warn him of that hazardous condition.

---

[1] Lapointe did not report the incident to Silko at the time it occurred, and the dealership first learned of his fall when it received the complaint filed in this case.

Silko moved for summary judgment, which the district court granted primarily based on its determination that Silko owed Lapointe no duty of care because "the danger posed by the oil on the floor was objectively open and obvious." Lapointe v. Silko Motor Sales, Inc., No. 1:16-cv-10532-MPK, 2018 WL 3849855, at *4 (Aug. 10, 2018). The court found inapplicable a "narrow exception" to "the open and obvious rule in Massachusetts" that imposes a duty to remedy a blatant danger "where the defendant should have foreseen that injury was likely." Id. In addition, the court noted Massachusetts precedent holding that a property owner does not owe a duty of care to a plaintiff where "the danger presented to the plaintiff was one that he had been hired to cure." Id. (quoting Ganley v. Percuoco, No. 004043, 2002 WL 389681, at *1-2 (Mass. Super. Jan. 7, 2002)).

On appeal, Lapointe argues that the summary judgment for Silko should be vacated and the case remanded for trial. He claims that the district court improperly failed to view the evidence in the light most favorable to him and "[i]nvad[ed] the province of the jury by deciding genuine issues of material fact."

**II.**

**A. Standard of Review**

We review a grant of summary judgment de novo, construing the facts, and drawing all reasonable inferences from those facts, in favor of the non-moving party. Rivera-Rivera v. Medina &

- 5 -

<u>Medina, Inc.</u>, 898 F.3d 77, 87 (1st Cir. 2018).  Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Facts are material when they have the 'potential to affect the outcome of the suit under the applicable law.'"  <u>Cherkaoui</u> v. <u>City of Quincy</u>, 877 F.3d 14, 23 (1st Cir. 2017) (quoting <u>Sánchez</u> v. <u>Alvarado</u>, 101 F.3d 223, 227 (1st Cir. 1996)).

**B. Applicable Law**

State law supplies the substantive rules of decision in a federal diversity case, <u>Easthampton Congregational Church</u> v. <u>Church Mut. Ins. Co.</u>, 916 F.3d 86, 91 (1st Cir. 2019), and the parties agree that Massachusetts law controls.  The parties also agree that the case of <u>Poirier</u> v. <u>Town of Plymouth</u>, 372 N.E.2d 212 (Mass. 1978), determines the outcome of this appeal, although they urge different dispositions based on its analysis.

In <u>Poirier</u>, the Massachusetts Supreme Judicial Court ("SJC") revisited its longstanding "hidden defect" rule, which placed an injured employee seeking a remedy from a property owner "in the position of one who has assumed all risks except those that he can prove were 'hidden.'"  <u>Id.</u> at 224.  Specifically overruling that precedent as applied to the employee of an independent contractor, the court held that a property owner's duty to contractors' employees going forward would be "the same as

- 6 -

that owed all other lawful visitors on the premises," i.e., "to take those steps to prevent injury that are reasonable and appropriate under all the circumstances." Id. at 227.

However, in expanding the duty of property owners to the employees of independent contractors, the SJC in Poirier retained a carve-out for risks "that are inherent in the job and of which the employee is fully aware." Id. This limitation reflects the general rule in Massachusetts that a landowner's duty to visitors "does not extend to dangers that would be obvious to persons of average intelligence." O'Sullivan v. Shaw, 726 N.E.2d 951, 954 (Mass. 2000). In other words -- placing the general rule in context -- a person hired to eliminate a hazard ordinarily would be aware of the potential for injury from that hazardous condition. In addition, allocating some risk to an individual who agrees to remove a dangerous condition accords with the limits Massachusetts places on a landowner's duty to any person lawfully on the property: "[A] landowner is 'not obliged to supply a place of maximum safety, but only one which would be safe to a person who exercises such minimum care as the circumstances reasonably indicate.'" Id. (quoting Lyon v. Morphew, 678 N.E.2d 1306, 1310 (Mass. 1997)). An independent contractor hired to remedy a hazard would reasonably be expected to exercise a different level of "minimum care" concerning the danger than an individual who entered the property for a different reason and was unaware of the risk.

- 7 -

Lapointe argues that the district court improperly granted summary judgment for Silko because material factual disputes remain concerning whether the dealership's failure to clean up the fluid on which he slipped, or to warn him of its presence, constituted actionable negligence. Lapointe asserts that a jury could find that the hazard was not "open and obvious" because the puddle was blocked by the waist-high pallet holding engine parts. Thus, he contends, a jury could find that Silko had a duty to eliminate the hazard or, at a minimum, to warn him about it.

Massachusetts tort principles, as described above, do not support Lapointe's contentions. To the contrary, the facts of this case fall squarely within the carve-out for injury to an independent contractor resulting from a risk inherent in the job he was hired to perform. See Poirier, 372 N.E.2d at 227. Jan Pro's cleaning obligations at Silko included removing oil and other fluids from the floors of the service area, and Lapointe expressly stated that, in the past, "there was oil and grease everywhere" on "this entire floor." Indeed, after his fall, Lapointe "swept and scrubbed the floor [because he] had a responsibility to do it." Put simply, Lapointe's job at Silko -- as he described it -- included removing slick substances from the floors, and he knew

that this hazardous condition might exist anywhere in the service area.

Lapointe's attempts to take this case outside Massachusetts' "inherent risks" precedent are unavailing. We accept, for purposes of summary judgment, that it was unusual for a pallet of engine parts to be in the service area and that the loaded platform prevented Lapointe from seeing the puddle of automotive fluid until he was upon it. Those facts, however, do not elevate the duty of care Silko owed to Lapointe under Massachusetts law. If the pallet obscured a section of the floor, Lapointe -- given his experience with "oil and grease everywhere" -- could only reasonably be expected to be more cautious when traversing that area than on the other occasions he worked at Silko. See O'Sullivan, 726 N.E.2d at 954 (noting the obligation to "exercise[] such minimum care as the circumstances reasonably indicate" (emphasis added) (quoting Lyon, 678 N.E.2d at 1310)). Likewise, the unusual presence of engine parts stacked on a pallet could only reasonably support a jury finding that Lapointe should have been more alert to the possibility of automotive fluids on the floor, not less so.[2]

---

[2] The contrast between the facts of this case and those in Poirier are instructive. The plaintiff in Poirier was an employee of an independent contractor hired to paint a town water tank, and he was injured when a stationary ladder attached to one of the tanks' legs sprang loose and threw him to the ground. 372 N.E.2d at 216. Upholding a verdict for the plaintiff, the SJC stated

Nor is Lapointe's view bolstered by the deposition testimony of two Silko managers, which Lapointe cites in arguing that a jury could find that the dealership failed "to take those steps to prevent injury that are reasonable and appropriate under all the circumstances." Poirier, 372 N.E.2d at 227. Lapointe points to testimony by Silko's service manager and operations director stating that: (1) the pallet was placed in a clean service bay ordinarily used for storage, (2) the dealership requires automotive parts to be drained before they are stored, and (3) the dealership purchases oil-absorbent mats to cover spills. Lapointe contends that this testimony would allow a jury to find that he would not have anticipated a build-up of oil or other fluid near the pallet and, if one had developed, he would have expected Silko either to cover it with a mat or otherwise eliminate the hazard.

The managers' testimony might be significant in assessing Silko's duty to other persons -- i.e., where the duty is generally one of reasonable care, see O'Sullivan, 726 N.E.2d at 954 -- but the dealership's methods for storing automotive parts and responding to fluid leaks do not create a duty to Lapointe where the hazard he encountered "was one that he had been hired to

_____

that the jury could "reasonably find the defendant negligent in failing to prevent the dangerous condition presented by the inadequately secured ladder." Id. at 221. Significantly, the plaintiff in Poirier was only hired to paint the water tank, not to alleviate "the dangerous condition" that caused his injury.

- 10 -

cure," Ganley, 2002 WL 389681, at *2. That is, Silko's efforts to minimize the risk from leaking automotive fluids by draining equipment and, if necessary, placing mats over spills does not mean that Lapointe could expect oil-free floors. Rather, his job was to clean up slick spots everywhere in the service area, a responsibility he acknowledged in his deposition. Lapointe thus "knowingly and voluntarily undert[ook]" the risk of encountering errant fluids on the floor, Poirier, 372 N.E.2d at 227, and the record reveals no basis for shifting to Silko the risk Massachusetts law allocates to him.[3]

In sum, Poirier's adoption of ordinary negligence principles for the employees of independent contractors does not entitle Lapointe to a jury determination on whether Silko breached

---

[3] Lapointe asserts that his role at Silko differed materially from that of independent contractors in other cases because "[d]efendant did not hire [p]laintiff to remedy this particular spill but, rather, to clean the floor area in the service department." Appellant's Br. at 21 (footnote omitted). We find no significance in that distinction. The hazard at issue here, as Lapointe described it in his deposition, was "oil and grease everywhere."

In addition, this case is distinguishable from Callahan, which Lapointe highlights in support of his position. There, an independent contractor engaged to remove debris from a boiler was injured when he slipped on water that had accumulated because of a malfunctioning pump. 509 N.E.2d at 1209. In upholding the trial court's rejection of the defendant's request for an "inherent risk" instruction, the appeals court observed that "removing water from the drainage trenches and risks inherent in that activity were not part of the case." Id. at 1210. In other words, unlike this case, Callahan did not involve an injury caused "by a condition [the plaintiff] had been hired to remedy." Id.

- 11 -

a duty of care to him.  On the record before us, with Lapointe acknowledging that oil could be anywhere on the floor, Massachusetts law -- as set forth in <u>Poirier</u> -- placed the risk of injury from a slick surface on the independent contractor hired to remove that "very hazard."  <u>Callahan</u>, 509 N.E.2d at 1210.

For the foregoing reasons, the district court's grant of summary judgment for defendant Silko is affirmed.

<u>So ordered.</u>