NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-372                                             Appeals Court

RYAN WARD  vs.  CHRISTOPHER M. SCHNURR & others[1]


No. 22-P-372.

Bristol.     May 11, 2023. - September 13, 2023.

Present:  Henry, Desmond, & Englander, JJ.


Negligence, Duty to prevent harm, Open and obvious danger.
     Workers' Compensation Act, Settlement agreement,
     Exclusivity provision.  Practice, Civil, Summary judgment,
     Amendment of complaint.  Conflict of Laws.



     Civil action commenced in the Superior Court Department on
November 23, 2018.

     A motion for leave to file an amended complaint was heard
by Renee P. Dupuis, J.; the case also was heard by her on
motions for summary judgment; and entry of separate and final
judgment was ordered by Debra A. Squires-Lee, J.


     Edward J. Mulligan for the plaintiff.
     John F. Brosnan for Julio Santana.
     Gail M. Ryan for Catherine Wilcox Schnurr.


_____

     [1] Catherine Wilcox Schnurr and Julio Santana.  As is our
custom, we take the defendants' names from the underlying
complaint.  We note, however, that Christopher Schnurr was
voluntarily dismissed from the case in November of 2020.

ENGLANDER, J.  The plaintiff suffered serious injuries to both his legs when the wall of a dilapidated and partially collapsed garage fell on him.  The standalone garage was on a residential property located in Fall River and owned by one of the defendants here, Catherine Schnurr.  The plaintiff was on Schnurr's property because Schnurr had hired the company for which the plaintiff worked, Go Green Services, LLC (Go Green), to demolish and remove the garage.

After seeking workers' compensation benefits from Go Green in Rhode Island (where the plaintiff resided), the plaintiff brought this negligence action in the Superior Court against Julio Santana, the principal of Go Green, and against Schnurr.  Santana defended on grounds, among others, that he was released and immunized from suit based upon the settlement of the plaintiff's workers' compensation claim.  Schnurr defended on the ground that she owed no duty to the plaintiff, where the plaintiff had been hired to remove the garage and where the garage's hazardous condition was open and obvious.  A Superior Court judge dismissed the claims against both defendants on summary judgment.  We affirm the dismissal.

Background.  The following facts are undisputed in the summary judgment record, unless indicated otherwise.

In February of 2016, the roof of the garage on defendant Schnurr's property collapsed, as the result of a snowstorm.

Schnurr thereafter contacted Go Green about demolishing and removing the garage, and in March of 2016 received a proposal from Go Green to perform those services. Schnurr agreed to the contract, which set forth the "[s]cope of work" to include, in particular, "[d]emo garage to concrete slab/ground level"; "[p]lace all debris in container/dumpster"; "[c]ontainer to be kept on site and be provide[d] by Go Green Services"; and "[r]emov[e] all debris from site."

The defendant Santana was one of the two principals of Go Green, together with his wife; Santana was responsible for the contracting side of the business. In April of 2016, Santana directed the plaintiff to go to Schnurr's property, to wait for a dumpster, and to complete the demolition of the garage.

The plaintiff arrived at the site on April 8, 2016, where he saw that the garage was partially collapsed, that weeds and vines were growing throughout the structure, and that the structure contained rotting wood. The plaintiff then called Santana and explained that he did not believe he could take down the structure safely in its then-present condition, and that additional equipment would be needed. Santana told the plaintiff that the job needed to be done, and said that he (Santana) would try to get to the location as soon as he could.

The plaintiff then walked around the outside of the collapsed garage. The plaintiff encountered what he described

as a "2-by-4" -- a piece of wooden construction material -- protruding out of the collapsed structure through a window.  He reached for the protruding object, felt that he could move it freely, and pushed it back toward the inside of the garage.  The garage then collapsed on top of the plaintiff, pinning his legs underneath.  The plaintiff sustained bilateral leg fractures, which required surgery.

The record is in conflict as to whether the plaintiff was an employee of Go Green, or an independent contractor, as of the time of his injuries.  As discussed below, the plaintiff's actual status ultimately is not material to our ruling, but the dispute is relevant background.

After being injured, the plaintiff applied for workers' compensation benefits with the Rhode Island Workers' Compensation Court.  Go Green, through its insurer, denied liability, claiming that the plaintiff was an independent contractor and thus not entitled to workers' compensation under Rhode Island law.  A Workers' Compensation Court judge agreed, and initially denied the plaintiff's petition.  Pursuant to the Rhode Island workers' compensation procedures, the plaintiff sought a trial regarding whether he was entitled to workers' compensation, but before the case went to trial the parties agreed to settle the dispute for a lump-sum payment of $19,000.  Thereafter, the Workers' Compensation Court approved the

settlement, and entered an order providing that Go Green was entitled to a release signed by the plaintiff. The plaintiff signed such a release, which released Go Green and the insurer. The release did not expressly cover Santana, or any of the officers or employees of Go Green.

In November of 2018 the plaintiff initiated this complaint in Superior Court. Count one is a negligence count against Schnurr. Count two is a negligence count against Santana.[2] After discovery, which included depositions of the plaintiff, Santana, and Schnurr, the defendants each moved for summary judgment. For his part, Santana argued that Rhode Island and Massachusetts workers' compensation laws, as well as the release that the plaintiff signed, barred the plaintiff's tort claim, and that, in any event, Santana could not be held liable for the plaintiff's injuries because he did not owe any duty to the plaintiff. Schnurr similarly contended that she had not owed any duty to the plaintiff, especially where the hazardous condition that the plaintiff was tasked with remedying was open and obvious and Go Green had been hired to remove it.

After the defendants filed the summary judgment motions, the plaintiff moved to amend his complaint to add Santana's wife and Go Green as defendants with respect to his negligence claim

---

[2] There is also a count three, which alleges negligence against the defendants as joint tortfeasors.

against Santana, and to assert, among other things, an additional claim for fraudulent and/or negligent misrepresentation against those defendants. Santana opposed the motion, arguing among other things that the plaintiff had unduly delayed in seeking such an amendment.

The judge granted summary judgment, largely accepting the arguments of each defendant. The judge also denied the plaintiff's motion to amend. This appeal followed.

Discussion. 1. Santana. We first address the plaintiff's claim against Santana, one of the principals of Go Green. Although the judge cited several grounds for granting summary judgment to Santana, we need rely only on one, which is that the plaintiff is precluded from pursuing a negligence claim against Santana as a result of the resolution of his workers' compensation claim against Go Green. "Summary judgment is appropriate where there is no material issue of fact in dispute, and the moving party is entitled to judgment as a matter of law." Berry v. Commerce Ins. Co., 488 Mass. 633, 636 (2021). "Our review of a decision on a motion for summary judgment is de novo." Id.

As noted, the plaintiff elected to pursue a workers' compensation claim against Go Green in Rhode Island. At the time of his injury the plaintiff resided in Rhode Island, and

Santana also resided in Rhode Island.[3]  The plaintiff was represented by counsel.  Although Go Green (through its insurer) denied workers' compensation liability and was initially successful in doing so, ultimately Go Green agreed to pay money to the plaintiff as a result of his workers' compensation claim, the plaintiff agreed to the settlement and provided a release, and the workers' compensation judge approved the settlement as provided by Rhode Island law.

These facts preclude the plaintiff from pursuing a negligence claim against Santana in Massachusetts.  Under the circumstances, the first question we face involves a choice of law issue.  It is clear that Massachusetts law applies to the plaintiff's tort claims -- the tort claims involve the condition of a Massachusetts property, and the injury occurred in Massachusetts, see Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 333 (1983) -- but under Massachusetts law, what is the effect of the settlement of the Rhode Island workers' compensation claim?

In our view, applying Massachusetts law we must look first to the preclusive effect that the settlement would be given under Rhode Island law.  The Restatement (Second) of Conflict of

_____

[3] The summary judgment evidence suggests that Go Green's headquarters were also in Rhode Island, at least as of the time the plaintiff began working for Go Green.

Laws § 184 (1971) says that "[r]ecovery for tort . . . will not be permitted in any state if the defendant is declared immune from such liability by the work[ers'] compensation statute of a state under which the defendant is required to provide insurance against the particular risk and under which . . . the plaintiff has obtained an award for the injury."  It is a basic precept of workers' compensation schemes that an employee's remedy against an employer for injuries suffered on the job is generally limited to the remedy available under workers' compensation law. See Estate of Moulton v. Puopolo, 467 Mass. 478, 483-484 (2014). That is true under Rhode Island law as well, and thus by pursuing a workers' compensation claim and accepting settlement funds, the plaintiff forewent any additional claim against his employer, Go Green.  See Kulawas v. Rhode Island Hosp., 994 A.2d 649, 656-657 (R.I. 2010) ("exclusivity provision of the [Rhode Island Workers' Compensation Act] preclude[d] a subsequent negligence suit against plaintiff's employer" where plaintiff had settled disputed workers' compensation claim).

The result is not different because here the plaintiff sued Santana rather than Go Green.  The Rhode Island Workers' Compensation Act exclusivity provision states that "[t]he right to compensation for an injury under [the act], and the remedy for an injury granted by [it], shall be in lieu of all rights and remedies as to that injury now existing, either at common

law or otherwise against an employer, <u>or its directors,</u>
<u>officers, agents, or employees</u>" (emphasis added).  R.I. Gen.
Laws § 28-29-20.  The Rhode Island exclusivity provision thus
establishes protection for "officers, agents, or employees," as
well as the company.  And the Rhode Island case law makes clear
that a settlement of a disputed claim is not treated differently
for exclusivity purposes; such a settlement "falls squarely
within the [Rhode Island Workers' Compensation Act's]
exclusivity provision."  <u>Kulawas</u>, 994 A.2d at 653.  In short, by
accepting the settlement, the plaintiff released not only Go
Green but also Santana, as a matter of Rhode Island statutory
and decisional law.

    We have little difficulty concluding that the plaintiff's
release of Santana under Rhode Island law also operates to bar a
tort suit in Massachusetts.  In addition to the principle
articulated in the Restatement (Second) of Conflict of Laws,
quoted above, we note that Massachusetts law has similar
exclusivity rules.  See G. L. c. 152, § 24.  As the Supreme
Judicial Court said in <u>Saab</u> v. <u>Massachusetts CVS Pharmacy, LLC</u>,
452 Mass. 564, 570 (2008), "[i]f a work-related injury <u>is</u>
compensable under the act, then § 24 applies and the exclusivity
provision bars any other remedies against the employer."
Massachusetts law also "bars an employee injured in the course
of his or her employment by the negligence of a fellow employee

from recovering from that fellow employee."  Anzalone v.

Massachusetts Bay Transp. Auth., 403 Mass. 119, 124 (1988).

Moreover, the plaintiff has not pointed us to any particular

Massachusetts policy that would be in conflict with the result

we reach.[4]  The purpose of the exclusivity provision is, in part,

to preclude exactly the type of tort litigation the plaintiff

seeks to pursue here.  See, e.g., Saab, supra at 566-567 (noting

Massachusetts Workers' Compensation Act "was designed to replace

tort actions" [citation omitted]).  Cf. Restatement (Second) of

Conflict of Laws § 6 ("policies of the forum" are "relevant to

the choice of the applicable rule of law").

The plaintiff appears to suggest, in his brief, that the

Rhode Island settlement can be ignored or avoided because it was

the product of the defendant's fraud.  The plaintiff points in

particular to Go Green's assertion in the workers' compensation

proceedings that the plaintiff was not its employee, but rather

an independent contractor.  On the summary judgment record,

however, the plaintiff's argument is unavailing.  The plaintiff

---

[4] Section 184 of the Restatement (Second) of Conflict of Laws, comment b, notes that "[i]t is uncertain" whether a forum State will follow another State's workers' compensation exclusivity bar where the defendant in the forum State is a fellow employee, rather than the employer.  Here, however, given that both the Rhode Island and Massachusetts exclusivity provisions bar subsequent recovery in tort against fellow employees, we see no reason to deny the Rhode Island settlement preclusive effect.

did not make a showing of fraud in his opposition to summary judgment. Moreover, the plaintiff was represented by counsel before the Rhode Island Workers' Compensation Court, and he knowingly entered into the settlement. In addition, it appears that the plaintiff did sign, pursuant to R.I. Gen. Laws § 28-29-17.1, a notice of designation as an independent contractor when he first began working for Go Green, meaning that there was some evidentiary support for Go Green's position.[5] The plaintiff's claims against Santana are thus barred as a result of the Rhode Island workers' compensation settlement.

2. Schnurr. The judge granted summary judgment for Schnurr on the ground that under the circumstances she owed no duty of care to the plaintiff. Ordinarily, of course, a landowner does owe a duty of care to those lawfully on his or her property. That duty has been described as follows: "[A]n owner or possessor of land owes a common law duty of reasonable care to all lawful visitors. This duty includes an obligation to maintain the premises in reasonably safe condition and to warn visitors of any unreasonable dangers of which the landowner

_____

[5] We note, nevertheless, that we are troubled by Santana's assertion, in this litigation, that the plaintiff was an employee of Go Green -- an assertion directly at odds with the position Go Green previously took, with some apparent success, before the Rhode Island Workers' Compensation Court. As discussed above, however, given the legal effect of the Rhode Island settlement, the plaintiff's actual status as employee or independent contractor is not material.

is aware or reasonably should be aware" (citations omitted).
Davis v. Westwood Group, 420 Mass. 739, 743 (1995).  Thus, if
the garage had injured an acquaintance whom Schnurr had invited
to the property, our analysis would be significantly different.

In this case, however, Schnurr claims that her situation
falls into a "narrow exception" to the above rule, where the
person injured was lawfully on the premises for the very purpose
of remedying the hazardous condition that caused the harm.
Schnurr relies in particular on Sparks v. Kepnes, 339 Mass. 349
(1959), and the Restatement (Second) of Torts §§ 343 and 343A
(1965).  We agree with Schnurr that the circumstances here fall
within the previously recognized narrow exception.

In Sparks, the Supreme Judicial Court addressed the duty
owed by a property owner to the employee of a contractor that
the owner had hired to "repair and completely reconstruct [a]
burned building."  Id. at 351-352.  In conducting the work, the
plaintiff, an experienced carpenter, was supporting himself on a
wall and cornice; both gave way, and the plaintiff fell from the
roof of the building to the ground.  See id. at 350, 352.  The
court held that the defendant owed no duty to the plaintiff
under the circumstances -- despite the "general rule" that
property owners are typically "obliged to warn . . . of hidden
defects" of which they are or should be aware -- "because the

[dangerous] conditions [of the building] were obvious." Id. at 351-352.

That no duty is owed under such circumstances is supported by the Restatement (Second) of Torts. According to the Restatement, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A. Accordingly, the duty of "[r]easonable care . . . does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them." Id. at § 343A comment e. See Dos Santos v. Coleta, 465 Mass. 148, 155-156 (2013) (discussing application of § 343A under Massachusetts law).

The above authorities encompass the commonsense recognition that a landowner who has a hazardous condition on his or her property may need to invite onto the property another person or persons to remedy that condition. The law, of course, wishes to encourage behavior that remedies hazardous conditions. Cf. Martel v. Massachusetts Bay Transp. Auth., 403 Mass. 1, 4-5 (1988) (noting rules should not "discourage owners from making repairs to dangerous property" [citation omitted]). And the

person engaged to remedy such a hazardous condition differs markedly from an ordinary invitee.  For one thing, there usually will be little question that such a person is aware of the danger, and thus there should be no need for warning.  Furthermore, such a person will have held him- or herself out as capable of remedying the condition.  Under those circumstances, it is reasonable for the law to reallocate the risk of harm from the property owner to the person who has sought to take on, and to alleviate, the hazard.  See Lapointe v. Silko Motor Sales, Inc., 926 F.3d 52, 55 (1st Cir. 2019) (one "hired to remedy a hazard would reasonably be expected to exercise a different level of 'minimum care' concerning the danger than an individual who entered the property for a different reason and was unaware of the risk").[6]

We acknowledge that since Sparks was decided, there have been some adjustments to the tort law relating to "open and obvious" hazards.  It is now clear that a landowner is not necessarily insulated from liability because an injury is caused

---

[6] To be clear, our decision is not based upon the now-abolished defense of assumption of the risk.  See G. L. c. 231, § 85.  Instead, it is based upon established case law that a landowner does not owe a duty to a person it hires to remedy hazardous conditions.  As the United States Court of Appeals for the First Circuit put it, the law has "retained a carve-out for risks 'that are inherent in the job and of which the employee is fully aware.'"  Lapointe, 926 F.3d at 55, quoting Poirier v. Plymouth, 374 Mass. 206, 227 (1978).

by an "open and obvious" hazardous condition, and that a duty to remedy the condition may nevertheless exist. In Dos Santos, for example, the court held that the defendant property owners could be liable for failing to remedy a hazardous condition -- a trampoline located near an inflatable pool -- that injured an invitee who attempted to flip from the trampoline into the pool. 465 Mass. at 149. Drawing from the Restatement (Second) of Torts § 343A, the court reasoned that a duty to remedy could exist, "despite the open and obvious nature of the danger," if (as in the facts of that case) "the landowner should anticipate the harm despite such knowledge or obviousness." Id. at 156, 163.[7] See Soederberg v. Concord Greene Condominium Ass'n, 76 Mass. App. Ct. 333, 339 (2010) (landowner could be held liable for injury caused by accumulation of ice and snow, despite open and obvious nature of the hazard).

The facts of this case, however -- as with the facts in Sparks -- are readily distinguishable from those in Dos Santos and Soederberg. In particular, here there are no facts in the

---

[7] There is a Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2010), which was published before Dos Santos was decided in 2013. The Supreme Judicial Court followed the Third Restatement with respect to a different issue, in Doull v. Foster, 487 Mass. 1 (2021). As to the issues presented here, however, we perceive no material difference between the Third Restatement and the Restatement (Second) of Torts. See Restatement (Third) of Torts § 51 comment k ("The duty imposed in this Section . . . is consistent with § 343A . . .").

record that indicate that Schnurr either did or should have anticipated the harm that befell the plaintiff. To be sure, Schnurr was aware that there could be a risk; but in retaining Go Green, she was appropriately seeking to remedy that risk. And on this record, it is not disputed that both Go Green and the plaintiff were also aware of the risk. Indeed, by contracting with Schnurr to demolish and remove the garage, Go Green both demonstrated its knowledge of the hazardous condition and held itself and its employees out as competent to safely remediate it.[8] Under the case law and the Restatement (Second) of Torts, Schnurr owed no duty to the plaintiff.

3. <u>Motion to amend</u>. The plaintiff also argues that the judge erred in denying his motion to amend his complaint under Mass. R. Civ. P. 15 (a), 365 Mass. 761 (1974) (rule 15 [a]). We disagree. Although rule 15 (a) provides that "leave shall be freely given when justice so requires," "the decision to grant such a motion lies within the broad discretion of the trial judge." <u>Harvard Law Sch. Coalition for Civ. Rights</u> v. <u>President</u>

---

[8] The plaintiff appears to suggest that Schnurr negligently delayed remedying the condition, citing the fact that she did not obtain Go Green's services until approximately two months after the garage initially collapsed. The plaintiff cites no facts, however, that indicate that any delay (even assuming it was unreasonable), somehow impacted the open and obvious nature of the danger associated with the partially collapsed garage. Cf. <u>Sparks</u>, 339 Mass. at 350 (concluding defendant owed no duty under circumstances in which the defendant delayed remedying a burned building for approximately four to five months).

& Fellows of Harvard College, 413 Mass. 66, 72 (1992). "Good reasons for denying such a motion include 'undue delay . . . [and] futility of the amendment'" (citation omitted). Kennie v. Natural Resource Dep't of Dennis, 451 Mass. 754, 766 (2008).

Here, the plaintiff's delay, coupled with the advanced stage of the proceedings, provided a sound basis for the judge to deny the motion. The plaintiff waited until July of 2021 -- over two years after he filed his original complaint, and after discovery had been taken and the defendants had moved for summary judgment -- to seek amendment, and he did not explain below (or in his brief on appeal) why he could not have done so earlier. See Libby v. Commissioner of Correction, 385 Mass. 421, 428 (1982). Given the stage of the litigation, there was no abuse of discretion. See Castellucci v. United States Fid. & Guar. Co., 372 Mass. 288, 292 (1977) ("A liberal amendment policy does not justify overriding the rights of a person who would be prejudiced by the last minute allowance of a motion to amend").

Judgment affirmed.